Bye-bye. Bye. Have a great day. Rest of the day. You as well, please. All right. Okay. Appeal 22-1780, Marcus Conner v. Dennis Reagle. Hello. Oh, Mr. Kelleher. Good morning, Your Honor. Anytime. Thank you. Before delving into the equitable tolling issue, I very likely, very quickly would like to address the speedy trial issue and just point out the fact that the speedy trial issue should serve as a context and give the court some perspective. And if we get through the equitable tolling issue, on the other side, we have what I would assert is a very strong and very meritorious speedy trial claim. Is there any prejudice to your client? The prejudice? As far as... As far as prejudice. You have to establish prejudice to establish a speedy trial act violation. What was the prejudice to your client? He was convicted in a two-day trial. He was sentenced to 72 years in prison. What was the prejudice to your client by waiting so much time? I'm not saying it wasn't an egregious amount of time. I'm just asking what was the prejudice to your client? The prejudice was the excessive pre-trial detention. How was that prejudice? What was the prejudice? There are loss of witnesses. There were witnesses that he would have called that were no longer available. The government's case got stronger. Usually, the government's case gets weaker as it grows a beard. Okay. So, what was the prejudice to your client in this case? Loss of evidence, etc. Judge Kirsch, I would concede that there was no definitive prejudice vis-a-vis the trial. But as Your Honor knows, as far as Barker explains and other courts, Manion and Moore, McDonald, the prejudice at trial, I would even go so far as to point to the McDonald case, it's not as important or less important than the excessive pre-trial detention time. And here, as Your Honor knows, it's 1,034 days. So, looking at it from that perspective, the prejudice is the excessive time that he sat in jail, the anxiety that he experienced, the upheaval, as we pointed out in the brief, of going from his home to prison and sitting there for 1,034 days. But again, I would admit, as far as the evidence goes for the trial, there was nothing lost there. And in point of fact, the evidence was entirely within the prosecution's control. These were obviously controlled bys. Everything was set. It was a very simple, exceedingly simple case. So, as far as the speedy trial claim goes, this is a rare instance, a rare case where the stars are aligned for the defendant because it's a simple case. The evidence is in the prosecution's control. The delay, as the Indiana State Court noted, was exceedingly long. Mr. Conner made six objections, albeit some of them admittedly pro se. But the case law is clear that the pro se objections, as long as the court is on notice, which it was here, the state does not counter that, as long as the court was on notice, the prosecution was on notice of these claims, the court looks at the frequency and force of those invocations. And he certainly made six invocations here. He also had no, unlike most other speedy trial cases, the defendant here, he didn't do anything wrong. He didn't do anything to delay. He did not make any requests for various hearings, as in many other cases. So, this is definitely sui generis in the fact that, again, this is a very, very strong speedy trial claim. Moving on to the equitable tolling, I acknowledge that equitable tolling is an extraordinary remedy. But this is an extraordinary case. What happened here with And it's those 10 words in the affidavit, I prevented Mr. Conner from timely filing a habeas petition. That is the catalyst for equitable tolling. And notably, the state in its response brief, it completely evades the affidavit. There's one sentence in the entire brief which addresses this affidavit. Doesn't get into the specifics, just essentially dismisses it with a wave of the I prevented a timely filing. That's what makes this case different. That's what makes this case different, and I would say even stronger than the Supreme Court case in Holland. In Holland, the would-be petitioner did his own legal research and was consistently telling the lawyer, hey, no, I think this is the deadline, and here's what I'm showing you. And, of course, the lawyer was ignoring him. Match that against Conner, where Sauer does tell Conner, this is the deadline, or, you know, this is what I think the deadline is, or this is what the deadline is. And Sauer saying, I prevented Conner. Can we fairly say that Sauer's words prevented Conner from doing legal research like Holland did? Conner had indicated he was prepared to go forward either pro se or with the help of someone in the prison law library. This seems to me a tough question here. Certainly, Your Honor. I would say in some ways this case is like Holland, and in some ways it's stronger. And I'm not trying to have it both ways, but in Holland, to my knowledge, he was, as Your Honor notes, he was aware, the defendant was aware of the timeline. I don't believe in that case, and I'm not sure if this makes a difference, but I don't believe the defendant in that case was ready to pull the trigger, i.e. ready to file his motion. Here, Mr. Conner is ready. He's got it literally ready to go, and he consults with his attorney, which again, and this is another kind of wrinkle in this case, Mr. Sauer is his attorney for the state proceedings, but not for the habeas. And that's another distinction in some of these cases that may or may not matter. But to directly, try and directly answer your question, I think again, the fact that Mr. Conner is ready to go on his own. He's ready to file this, and then Mr. Sauer steps in and says, don't do it. Don't do it. And again, we don't have the explicit exchange, but basically, don't interfere. Let me handle things. Let's let the state process, the state court process run its course, and then you can do your thing. So I think that's what that our position here is even stronger, because he again, actively intervenes. Whereas in Holland, it was more of a situation where counsel just kind of... How do we know Conner was ready to go, ready to pull the trigger, as you say? I know we, my understanding of the record is Conner says he was planning to move forward with a private attorney or with, but I see that as distinct from saying, I have a paper, I have a document I'm ready to file. What are you saying, and where in the record does that come from? That's, I would say that's my reading of the exchange. And again, we don't have the exact exchange, but I would say my reading of the record is he was ready to file it. I don't have... Would this case be different if Mr. Conner had told Attorney Sauer that he was drafting his own habeas petition, and Mr. Sauer had said, okay, you've got plenty of time because the clock won't start running on the habeas deadline until your cert petition is resolved. So let's assume Mr. Sauer never told Mr. Conner to hold off, but Mr. Conner nonetheless delayed filing his habeas petition until the deadline. Would Mr. Conner then be entitled to equitable tolling? Probably not in that instance, because there was no active intervention. If it was just a matter of, you know, Mr. Sauer saying, hey, the deadline is X, and that deadline is incorrect, you know, again, I would concede based on Lawrence, based on Holland, based on Lombardo, that's not enough. That would not suffice for equitable tolling. But again, because we have that active intervention, and again, I would stress to the court, that's what makes this case different from virtually any other instance. That active intervention is what distinguishes this case. So if there are no further questions, I would reserve the balance. Well, you'll have your full. Thank you, Your Honor. Okay. Let's see. Hello, Mr. Banks. Good morning, Your Honor. Afternoon now. And may it please the court, Tyler Banks for the respondent, Warden Dennis Regal. Mr. Conner's habeas petition was filed after the expiration of the statute of limitations, and the district court rightly dismissed it as a violation of the habeas deadline. Such a miscalculation... I'm sorry. Why, in your view, do you not think it matters that Mr. Sauer not only gave Mr. Conner bad advice on the habeas deadline, but affirmatively admonished him to hold off on filing his habeas petition? A few responses why that additional bad advice doesn't matter. One, the bad advice is kind of just... I would say goes part and parcel with the miscalculation. Second, I would point this court to its opinion in Ademiju. I apologize for mispronouncing that. In that case, we have a trial counsel telling a defendant who pleaded guilty that he had no avenues in the future for collateral review. So essentially, he told this petitioner that there was no way, shouldn't even bother going and looking for routes to collaterally challenge his petition. And this court held that was insufficient to justify equitable tolling. And so similarly here, I think this is less egregious advice. We have an attorney in a different context giving advice about some future context and why that case is particularly on point. And third, neither this court nor the Supreme Court has ever held that bad advice alone is enough to justify extraordinary circumstances and justify equitable tolling. Holland was not that case. Holland was abandonment by his habeas counsel, and I think that's a really important distinguishing point. Well, here we have Mr. Conner, and I just wonder if you think it matters at all. Does it really have counsel? Sauer is his state post-conviction counsel, not his federal habeas counsel, yet Sauer is giving him this absolute advice. And so we don't have that situation in Lawrence, and we don't have that situation in Holland. Seems to me we're in some gray netherland between Lawrence and Holland. So can you address that, why in your view, it sounds like it doesn't make a matter Sauer's position? I think it does matter, and it matters that he was not habeas counsel. So in Holland, what you have is someone who's being represented to do this specific task, file a federal habeas petition. Sauer was never going to do that. Or to put it another way, Your Honor, it was always going to be Mr. Conner's responsibility to file a habeas petition. That had not been placed on the shoulders of some attorney who was negligent or abandoned him, as the attorney did in Holland. Now, yes, Mr. Sauer here may have given some bad advice in a context in which he was not completely familiar. But I think it's worse than, I think that is not as bad as in the situation in which a counsel is appointed to handle this situation for a petitioner, and then gets the deadline wrong. Look at a case like Lombardo. Lombardo has the egregious circumstance of being habeas counsel, and the reason in his pitch for he said that he relied on a trusted paralegal, which was why he miscalculated the deadline. In Lombardo, we have habeas counsel who's responsible for filing this, and we have a probably more egregious instance of attorney misconduct than what we have here, where Mr. Sauer at least went to another attorney, an experienced habeas practitioner, to try to get advice about the particular deadline in this case. So I think that under both Adam Nijoo and Lombardo, we don't have a case here that Mr. Connor can point to where bad advice alone was what caused, was sufficient for equitable tolling. Socha is not that case. So according to you, if Mr. Sauer was not his lawyer at the time he was rendering the advice, it makes the claim for extraordinary circumstances even weaker. I believe so, Your Honor. Assuming good behavior, how much of the 72-year sentence is Mr. Connor likely to serve? At the time he committed his crimes, Indiana generally had one day per day credit time, so it would be 50% of that total. And he's done 12 years. Yeah, yeah. So times two is 24 minus 72 is difficult to do an oral argument. I'm sorry, Your Honors. So he does have some significant time. It's been a bit since I looked at his expected release date. So it would be 72 divided by two is the total time, minus credit time for the pretrial incarceration. We, you know, we held in the Whatley case that the youth program center enhancement was unconstitutionally veiled. Is any relief available to him at this point in time pursuant to that decision? No, Your Honor. That, so Whatley, this claim was raised in state post-conviction proceedings that counsel was ineffective for not essentially making a Whatley claim. But Whatley claims and that vagueness challenge are as applied. And as applied in this case, Mr. Connor was dealing within, I believe, a thousand feet of a boys and girls club, which was an unquestionable, even cited in Whatley as kind of the paradigmatic example of what we would consider a youth program center. So, I mean, and that is just on the merits, Your Honor. There would be other obstacles to Mr. Connor getting relief on that claim. He would have to ask for either a successive habeas petition from this court or a successive state post-conviction petition from the Indiana Court of Appeals. So, procedurally, I think that would also be difficult for him. I want to... I thought it was a, taking nothing from your procedural point, but I thought it was some general government building and there were, health department was in there and there were two programs at the health department. I do believe you're right about that, Your Honor. I'm confusing that with another case, I apologize. But that claim was at least already litigated in state post-conviction proceedings for counsel being ineffective for not challenging that as much on this. Maybe that was a sufficiency challenge. I don't know because it hasn't been raised in these proceedings, Your Honor, so it would be defaulted at this point in time. Mr. Connor is hanging his case for equitable tolling really on this active prevention. But giving bad advice is not active prevention. At least this court's never so held and the U.S. Supreme Court's never so held. If we want to think of it another way, this court has commonly said that extraordinary circumstances for tolling are something outside, external to the petitioner that is outside of their control. It's only when an attorney's misconduct is so egregious that any court will say that it's acting against the petitioner's interest, essentially being the He was not external to Mr. Connor's interest. And we don't have the, as you pointed out, Your Honor, we don't have the loss of control. Well, I don't see how you say he wasn't a rock because had he not said what he said, Mr. Connor would have filed. How is that not a rock? Because he's still not working against it. The attorney misconduct cases, I think, Your Honor, establish the idea that attorney misconduct only becomes egregious such that equitable tolling when basically counsel isn't being counsel anymore. So Socha's a really good example of that. In Socha, the state post-conviction counsel retained the petitioner's file to such an extent that he actually was stolen from his client, essentially. And at the time that his supervisor then returned it to the petitioner, the petitioner had basically no time to write a petition. I thought that was Holland. Holland is the Florida case. No, Socha is this court, Socha v. Botten is retention of the file. Holland is the serial miscommunication and abandonment by habeas counsel. But as you pointed out, we don't have that loss of control either. Mr. Connor was, he even told counsel that he was, or told Sauer, that he was considering filing a petition to either private counsel or to help the jailhouse lawyer. And I would seriously dispute that the record establishes that he had a petition ready to go for filing at the time this advice was given. I don't think the record bears that out, at least as an established proposition. I'll briefly talk about the speedy trial issue. I noted in my opponent's presentation that no mention of the term unreasonable application was made. The state court did not unreasonably apply federal, clearly established federal law, and to be able to even have a discussion about whether the Barker factors were weighed incorrectly. Well, the state court does ask the question, you know, if trial counsel hadn't been effective, would Connor have won the speedy trial claim in trial court? And that's not the question under Strickland. Strickland asked for the prejudice prong, whether there's a reasonable probability that the result of the outcome proceedings would have been different. That's very different from requiring a petitioner to show he would have won. I actually disagree, Your Honor. The deficient performance prong for failure to make a particular objection shows that it had to be meritorious, and then the prejudice is the outcome, should that have been found to be meritorious. So if we look in a normal trial setting, like had counsel objected to this piece of evidence, one, deficient performance, would that have been a successful objection? And two, prejudice, even if we were wrong about that, would it have made a difference, made a reasonable probability to the difference of the outcome? So on this particular type of claim where the relief is unsatisfactorily extraordinary, as the U.S. Supreme Court has put it, he has to show that the merits for the deficient performance. Now, I would agree with you if, should we get through the 2254 barrier of deference and get to de novo review, should this court find that the Barker claim was or would have been successful, we don't have an argument on prejudice because of the extraordinary nature of the speeding trial remedy. I have no further time unless this court has further questions. We ask to affirm the denial of habeas relief. Thank you very much. Thank you, Mr. Banks. Mr. Kelleher. Thank you, Your Honors. Ultimately, vis-a-vis the equitable tolling test, this court has a the court will look at virtually all the circumstances, and that's per holland, look at the entire context. And here I would respectfully ask the court to consider some of the, obviously some of the issues the court has raised today. The sentence, okay, the underlying offense, and the length of delay that Mr. Conner sat in jail. All these different pursuing his rights. So there's just various factors involved here, including just two blatant examples of incompetent and ineffective assistance. As in Holland, Mr. Sauer here basically blew Mr. Conner's only chance of getting any sort of relief or just even a chance at relief. So based on Holland, based on this court's decision in Soka, I think there's a very credible and very strong reason for this court, again, acknowledging that the hurdle of both speedy trial claims and equitable tolling claims. I recognize these are two huge hurdles that we have here. But again, based on everything that has transpired in both the trial court with incompetent and ineffective counsel and the post-conviction counsel, again, this case is just, what has happened here is frankly an injustice. And I would ask the court to consider all of those facts in its determination. And if there are no further questions, I would thank the court for its time. And before you run away, the court wishes to thank you, Mr. Kelleher, for, I'm going to use this word, just a splendid brief and argument on Mr. Conner's behalf. And I, of course, also want to thank Mr. Banks. That was a really extremely well-done argument by both of you. And you really have, both of you have, the thanks of this court. So, happy Valentine's Day to one and all. And the court is in recess until tomorrow morning at 9.30.